All rise. The United States purpose meal for the 9th Circuit is now in session. Please be seated. Good morning, everyone. There are a number of matters on the calendar that have been submitted on the briefs and record. Marcos Santiago v. Garland, Guzman Chicas v. Garland, Bulersuk Muktumur v. Garland, Ryan v. Kijikazi, and Hay v. Garland. So the first case up for argument today is U.S. v. Oliver. Good morning. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Jonathan Oliver. I'd like to reserve two minutes for rebuttal. All right. The Sentencing Reform Act of 1984 created a new legal paradigm that did not exist at common law called supervised release. And what it did is supervised release created an ongoing sentencing relationship between the sentencing court and the defendant, in this case, Mr. Oliver. Obviously, the judge who sentenced Mr. Oliver is not going to supervise Mr. Oliver. In this case, Judge Malloy relies on the probation office to do that. But the court has continuing authority over Mr. Oliver, and that's codified at 18 U.S.C. section 3583, 3583 being the supervised release statute. And particularly in subsection E, the court has authority to extend a term of supervision, to terminate a term of supervision, to modify a term of supervision, or, in terms of liberty interests, most significantly revoke the term of supervision and impose a new term of imprisonment. And the point being, during that entire time, Mr. Oliver is a party to a judicial proceeding. The court has continuing authority. No new criminal action has to be instituted to have that authority over Mr. Oliver. And something that routinely happens in Montana is when this court issues a ruling on a condition of supervised release and somehow shifts the law relative to the conditions used in Montana, the probation office will start modifying my client's conditions of release. And I bring that up because no new legal action is necessary. My client's subject to the court's authority. In other words, my client's a party to a judicial proceeding. That gets to 18 U.S.C. 1001, the False Statement Act, and subsection B, the exception that the False Statement Act does not apply when someone's a party to a judicial proceeding. The other relevant statute here, as I've briefed extensively, is 3603, and particularly subsections 2 and subsection 7, which mandate the reporting requirements of the probation officer regarding someone who they're supervising on supervised release. Do you know whether the monthly reports are routinely submitted to the judge? I thought that they were not. No, they are not routinely submitted. And so doesn't that make a difference? It doesn't in the sense of here what the probation officer alleged in the petition to revoke was a new federal crime. That was the violation, violating the condition of release that Mr. Oliver couldn't commit any new crimes. There's not going to be any discretion exercised when a probation officer believes that a new crime is going to be committed, particularly a new federal felony offense. So in this instance, the probation office didn't exercise any discretion. It had to report that conduct to Judge Malloy. And, in fact, it could have done it in two ways. One would be an informal noncompliance report where the probation office is basically saying, here there's been this violation of the conditions of release. We think we can handle it. Drug relapse would be the best example. We think we can handle it with treatment, perhaps more drug testing. So judge, rather than taking any formal court proceeding actions, just go ahead and let us handle it. Or there's a report of a new violation in a petition to revoke, which is what happened here. But the obligation to report, the obligation on the part of the probation officer to report, in this case only came about because the statement was false. So it seems a bit circular in that there's no general obligation to report everything he says. There's a requirement to keep the court informed of the conduct of the defendant. And here, but for the falsity, he wouldn't have had to report the statement. Isn't that right? But it's because it wasn't just something that was false that I don't want to say was trivial. This was a falsity that the probation office believed was a new federal felony offense. There's no discretion being exercised. And, in fact, I think Judge Malloy recognized that violations have to be reported to the court. I understand that. My point is that it seems different from what we confronted in Horvath, where we said there you had a duty to talk to the person, hear what they say, and report that in the PSR. Here, you don't have a general duty to report statements. It's only when the statements reveal that there was a crime that you have to report that. So I think the difference is that in the one context, the Horvath context, it's more natural to say that the statement is being made to the court than it is here, where it won't necessarily be reported depending on what it does or doesn't reveal. Isn't that a difference? I think Horvath is a little overbroad in that these PSR interviews, I've participated in many, can last maybe 45 minutes. I always tell my clients figure an hour, but they could be two hours. Just like when you're writing a document, the ultimate result is at the tip of the funnel. There's a lot more thought and maybe even more drafting that is done than ever ends up in the final product. So in Horvath, it's not as though there's a recording of the PSR interview and every document that's gathered by the PSR writer that's put in their file. That's not all handed to the judge. Again, it's funneled, and what comes out at the tip is what the judge receives. So I don't believe that this is distinct from Horvath for that reason, but also because even though not every monthly report is submitted to the court, it's still, the probation office believe, a federal crime, and that has to be reported. And the probation officer testified. He has to report violations to the court. And it's very clear in the statute that this reporting is mandated by Congress. And that's another thing in Horvath that the court didn't really explore 3603 because it was dealing with the PSR stage, which is controlled by Rule 32 of the Federal Rules of Criminal Procedure. But to the extent Horvath did mention 3603, and I've quoted in his brief, it references that statute and says, in performing those tasks, meaning the task in 3603, a probation officer exercises varying degrees of discretion and except in certain narrow circumstances, labors under no statutory mandate to report particular comments to a judge. This is exactly that narrow circumstance. Counsel, does it matter that Mr. Oliver didn't know that the forms would be submitted to the judge? Because you're saying that what triggered the obligation to send it to the judge was that it was false, or that it was a crime, but Mr. Oliver didn't know that. I think anybody under supervision, and particularly Mr. Oliver, is aware that their interactions with the probation officer may end up being reported to the judge. In fact, he had already, shortly into his term as supervision, a noncompliance report. But the statute says submitted to the judge, to a judge. Excuse me? The statute says that the writings or documents are submitted to a judge. So if you, I mean, it seems very different where you don't know if it's going to go to a judge or not. It's a possibility it could go to a judge, but that's very different than submitting it to a judge. Well, and that gets to my point that I keep making. This case has very unique circumstances in that that report was tantamount, according to the probation office and Judge Malloy's findings, to a new federal criminal offense. So I'm sure Mr. Oliver realized if he's going to commit a new federal criminal offense, it's going to be reported to the judge. So you wanted to save a little bit of time. Yes. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Tim Roscoe, Assistant United States Attorney from the District of Montana for the United States. It's a pleasure to be back in person. Indeed. From our perspective, Your Honors, there's three reasons why the judicial proceedings exception does not apply in this case. The first, as you've already discussed with Mr. Rhodes, is this court's decision in the Horvath case. And the focus in the Horvath case was that the probation officer does not have discretion in terms of what has to be reported to the court. So even though the probation officer in the PSR context has a role as a truth finder and an investigator, the officer is still obligated to report to the court what the defendant tells him or her when they're in the PSR process. So when Mr. Horvath said, I was a decorated Marine, even if the probation officer had figured out then, which he did not, but if he had figured out then that Mr. Horvath was lying to him, he still would have had to report to the court, Mr. Horvath said he was a decorated Marine. And that is a fundamental difference between what happens within the context of supervision, and from our perspective, it boils down to discretion. Probation officers, when they are supervising individuals, as opposed to when they are creating pre-sentence reports, have discretion. Even in this case, the probation officer had the discretion, although there is an obligation under the statute to report violations to the court, the officer has discretion in terms of what remedy to ask the court for. If it's a minor violation, the officer could say, Judge, I think we can just deal with this on a noncompliance report. We'll have a meeting with Mr. Oliver and we'll try to get him back on track, so I'm letting you know he violated, but I'm not asking you to revoke his supervised release. And we don't know, but even here- Well, that seems to suggest that there was no discretion in reporting the statement, though. We agree with Mr. Rhodes that probation officers are statutorily obligated to report violations to the court. Where the discretion comes in is, what exactly does that mean? How does that report take place? They aren't necessarily asking the district court to revoke the individual. So they have broad discretion in terms of how to interact with the defendant in terms of managing that supervision. That seems indistinguishable from Horvath. I mean, the officer in Horvath has discretion on how to describe what was stated to him, but he has the obligation to generally convey what the defendant says. So here you're saying there's an obligation to send the statement to the judge, but he has some discretion on a peripheral matter. Well, he has to report violations of the condition. So if it-take it outside the false statement context for a moment. If it's a positive drug test, which happens so frequently, he has to say, Judge, he violated. Here's a noncompliance report, but we think we can work with him. And in our view, it's the level of discretion that the officer has in order to try to keep the defendant on track, which is the whole purpose of supervision, that leads them to having the kind of discretion that doesn't bring the judicial proceedings exception into play. But, I mean, there's a difference in discretion in reporting the statement and discretion on what the remedies are. And you're sounding-it sounds like there's no discretion on the reporting. So I just don't see how there's that much of a distinction from Horvath. Well, we don't think there's discretion in the sense that we don't think that the probation officer could tell the court, he violated a condition, but I'm not going to tell you which one. But he could have even asked for revocation under a different condition. There are other conditions that Mr. Oliver was under that he violated by making that statement. For instance, failing to truthfully follow the directions of the probation officer and provide truthful information about his finances, a totally separate condition, not the allegation that he committed a new crime. And the petition could have included that information. It could have been a petition just to modify as opposed to revoke. So in our view, it's having that level of discretion that distinguishes this case from Horvath. And even in the Manning case from the Tenth Circuit, they're focusing on discretion. It's a similar issue. They come down differently than this court when it relates directly to the pre-sentence report. But their focus there is discretion as well. And the focus in the Sixth Circuit's case in Vreeland is discretion as well. How much discretion does the officer have to supervise an individual, which is different from what they have to report to the court? And when they have that greater level of discretion, with the whole goal being to keep an individual on track to keep them compliant with the law, then we believe that the judicial proceedings exception doesn't apply. Judge Winn, to your point, the monthly reports are not necessarily provided to the court. In fact, as Judge Molloy noted in the record, they're generally not relayed to the court. And, in fact, they're not even required as a condition of supervision, which again shows the level of discretion the officer had. This officer decided to require monthly reports from Mr. Oliver because he had concerns about his finances, but they're not even required as a condition of supervision. So it's another tool at the officer's disposal to try to help manage the defendant and keep them in line with all of the conditions of supervision. I'm happy to answer any questions from the court, but I'm also happy to cede the remainder of my time and rest on our briefs. Just one housekeeping. Does Henderson take care of Mr. Oliver's due process arguments? Yes, in the sense that I think it, again, highlights the fact that sentencing in this context without a mandatory minimum overlay is traditional, is akin to the sentencing for the underlying crime. So Henderson's not directly on point, as we noted, but it shows that judicial fact-finding is permitted under those circumstances. So sort of a roundabout way of saying yes, it's not directly on that point because that wasn't the precise issue, but we believe that it does. Thank you, Your Honors. Thank you. The government's concession that there was a mandatory obligation to report proves our case. And that's where the Mejia-Sanchez case is important. And as I brief, what happened there was sort of a flood across the country of likely federal public defenders like myself who started arguing that it violated the separation of powers for the probation office to be filing a petition to revoke. Instead, it should be the U.S. Attorney's Office. And what this court noted was all the probation office is doing is supplying information to the court. It's the court that makes the decision to start revocation. And in this instance, even if a noncompliance report had been submitted to Judge Malloy, and I don't know if you've seen these. They're a one- or two-page document outlining the alleged violation. The probation officer usually has a remedy. Drug use is the prime example, a treatment-oriented remedy suggesting that the person remain on supervision. And then the judge reviews that, and then there's boxes to check. And the judge can agree with the probation office, but the judge could also convert it into revocation. So in this instance, whether it's a petition to revoke filed by the probation officer or a noncompliance report recommending no court action, the fact remains the probation officer was obligated to report this to the court. There's no discretion involved. And I believe the government's conceded that, which makes this very distinct and a different case from Horvath. So for those reasons, Your Honor, our request is that the court vacate the judgment imposed by the district court and remand to Montana for further proceedings. All right. Thank you.  The matter is submitted.
judges: NGUYEN, MILLER, BUMATAY